CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 13 2015

JULIA C. DUDLEY, CLERK
BY: /s/ Linda Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARKETIA JONES, | ) |
| Plaintiff, | ) Civil Action No. 7:14-CV-00401 |
| v. | ) **MEMORANDUM OPINION** |
| KROGER LIMITED PARTNERSHIP I, et al., | ) By: Hon. Glen E. Conrad |
| Defendants. | ) Chief United States District Judge |

This case arises from harassment that Plaintiff Marketia Jones allegedly experienced while employed at a Kroger store in Franklin County, Virginia. The case is presently before the court on a motion to dismiss filed by Defendants Kroger Limited Partnership I ("Kroger") and Jim Townsend ("Townsend") (collectively, "the defendants"). For the following reasons, that motion will be granted in part and denied in part.

## Factual and Procedural Background

The following facts, taken from Jones's complaint, are accepted as true at this stage in the proceedings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

Jones began working for Kroger as a cashier in September 2012, when she was sixteen years old. Compl. ¶ 5, Notice of Removal Ex. A, Docket No. 1-1. Townsend was employed as the general manager of the Kroger location where Jones worked. Id. at ¶ 15. Jones alleges that while employed there, she was sexually harassed by another Kroger employee, Trevor Gammon. Gammon was "verbally vulgar, offensive, and sexually suggestive and demanding" toward Jones and other female Kroger employees. Id. at ¶ 7. Jones contends that Gammon "would insist on being [her] bagger," and would then "continuously harass[] [her] while she was performing her legitimate employment duties as a cashier." Id. at ¶ 9. Gammon's verbal harassment was

accompanied by "constant unwelcome touching...in a sexual manner, including [touching Jones's] lower back and buttocks area, and on her sides above and onto her upper hips." Id. at ¶ 12. Jones specifically alleges that Gammon assaulted her on September 18, 2012 by "repeatedly caus[ing] his body to come into contact with [hers] in a sexual manner, intending to create or simulate sexual contact or acts." Id. at ¶ 6.

Jones submitted formal written complaints about Gammon's behavior to Kroger, consistent with its sexual harassment policies. Id. at ¶ 13. Jones and her parents also "had numerous meetings with [Kroger] representatives concerning [Gammon's] actions and [her] formal complaints." Id. at ¶ 15. Kroger "acknowledge[d] that all of [her] complaints were 'at least in part substantiated,'" and that it had received "no less than '[seven] different statements from different women'" about Gammon's harassment; they nonetheless told Jones that their "hands were tied" and they "weren't sure" whether anything could be done to stop the harassment. Id. at ¶ 16. Gammon remained employed by Kroger, and Jones and Gammon continued to work the same shifts. Id. at ¶ 17.

Jones filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 26, 2012. Id. at ¶ 18. Kroger then began to retaliate against her by singling her out for "less desirable duties" and "continuously verbally reprimand[ing] her." Id. at ¶ 19, 23. For example, Jones "was forced to sweep and scrub floors, clean the break room, [perform] 'trash duty,' and...work the 'parking lot' late at night, alone, despite her repeated complaints to [d]efendants...that such...duty...caused her to reasonably fear for her safety." Id. On March 30, 2013, Jones told a Kroger employee that parking lot duty made her fearful. That employee summoned Townsend, who

2

then assaulted [Jones] by yelling at [her] within inches of her face,...while repeatedly 'bumping' his chest against [Jones] in a threatening...way...scream[ing] loudly: "the situation with Trevor [Gammon] is over!" and "You don't work for your parents, you work for me and if someone tells you what to do you will do it or you will lose your job!"

Id. at ¶ 21.

On April 29, 2013, Jones's shift supervisor demanded that she produce a doctor's note to justify a previous absence. Id. at ¶ 25. When Jones was unable to do so, the supervisor "summarily dismissed [her] [from the shift] without further explanation or reason." Id. On May 1, 2013, Jones and her parents went to the store to discuss these ongoing problems. Id. at ¶ 27. They spoke with an assistant manager, who told them that he would relay their concerns to Townsend. Id. On May 3, 2013, however, Jones's father was instead served with a "no trespassing" notice issued by Townsend, which "falsely alleg[ed] that [he] had been 'disruptive and/or damaging' to Kroger business." Id. Jones ultimately resigned as a result of this hostile work environment. Id. at ¶ 26.

Jones filed this action in Franklin County Circuit Court on July 1, 2014, asserting claims of negligence, sexual harassment, retaliation, and assault and battery. She seeks $1,000,000 in compensatory damages and $1,000,000 in punitive damages. The defendants removed the case to this court on August 1, 2014. On September 5, 2014, the defendants moved to dismiss portions of the complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on October 14, 2014. Following the hearing, both parties submitted additional briefs, which the court has reviewed. The motion is now ripe for decision.

## Standards of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiff's complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

3

Fed. R. Civ. P. 8(a); see Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court, however, is "not so bound by the plaintiff's legal conclusions." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss, the complaint must contain "sufficient factual matter…to 'state a claim…that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.

Rule 12(b)(1) provides for dismissal of claims over which the court lacks subject matter jurisdiction. The plaintiff bears the burden of showing that the court has jurisdiction over her claim. See Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012). In this case, the defendants have "attack[ed] the… complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie." Lucas v. Henrico County Sch. Bd., 822 F.Supp.2d 589, 599 (E.D. Va. 2001) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In such a challenge, a court assumes the truth of the facts alleged by [the] plaintiff, thereby functionally affording the plaintiff the same procedural protection…she would receive under Rule 12(b)(6) consideration." Id.

## Discussion

The defendants have moved to dismiss each of Jones's claims, either in whole or in part. The court will consider each claim, and the defendants' corresponding arguments for dismissal, in turn.

4

## I. Count I: Negligence

In Count I, Jones asserts a state law negligence claim, contending that the defendants breached various duties owed to her, including the duty to "protect and ensure [her] health, safety, and well-being while on their work premises"; the duty to "[e]nsure that the work environment...did not expose [her] to unwholesome influences, offensive or criminal conduct or mistreatment"; and the duty to "[t]ake swift and firm necessary corrective action immediately when advised of offensive or criminal conduct against one of its employees at the hands of another employee." Compl. ¶¶ 30-31. At bottom, this negligence claim seeks to hold the defendants liable for failing to properly supervise Gammon, which allowed him to harass Jones. The defendants argue that this claim must be dismissed, because Virginia does not recognize negligent supervision as a viable cause of action.[1] The court agrees.

It is axiomatic that "[t]here can be no actionable negligence unless there is a legal duty, a violation of that duty, and a consequent injury." Chesapeake & Potomac Tel. Co. of Va. v. Dowdy, 365 S.E.2d 751, 754 (Va. 1988). In Dowdy, the Supreme Court of Virginia held that an employer has no duty to supervise its employees to prevent the excessive criticism of one employee by another. Id. The vast majority of courts have "interpreted Dowdy as foreclosing any cause of action for negligent supervision in Virginia."[2] Gilbertson v. Purdham, 78 Va. Cir. 295 (Roanoke 2009); see Elrod v. Busch Ent. Corp., Nos. 4:09-CV-164, 4:09-CV-165, 4:09-CV-166, 2010 WL 5620918, at *6-7 (E.D. Va. Dec. 14, 2010) (collecting cases). This court cannot

---

[1] Virginia law applies to Jones's state law claims. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496-97 (1941); Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 33 (Va. 1993).
[2] A small handful of Virginia circuit courts have speculated that Dowdy may not have "completely ruled out" a cause of action for negligent supervision in all cases. Hernandez v. Lowe's Home Ctrs., Inc., 83 Va. Cir. 210 (Norfolk 2011) (distinguishing Dowdy to overrule demurrer to negligent supervision claim); Johnson-Kendrick v. Sears, Roebuck & Co., 39 Va. Cir. 314 (Norfolk 1996) (stating that the Dowdy Court "did not opine that there would never be a situation in which an employer would have a duty to supervise an employee.").

create a duty to supervise where Virginia courts have not. Thus, to the extent that Jones's negligence claim is based on the defendants' negligent supervision of Gammon, that claim must be dismissed for failure to state a claim.

Jones argues that her claim should survive because it is premised in part on the defendants' negligent hiring and retention of Gammon and Townsend. See Pl.'s Br. in Opp. to Def.'s Mot. Dismiss at 1, Docket No.17. Virginia law recognizes the independent torts of negligent hiring and negligent retention. See Southeast Apts. Mgmt., Inc. v. Jackman, 513 S.E.2d 395, 397 (Va. 1999). The defendants argue, however, that Jones's claim nonetheless fails because she does not allege that she suffered any physical injury as a result of the defendants' purported negligence. The court agrees.

Liability based on negligent hiring or retention is premised on situations that create "an unreasonable risk of harm to others." J. v. Victory Tabernacle Baptist Church, 372 S.E.2d 391, 394 (Va. 1988). The Supreme Court of Virginia has determined that this risk "requires the threat of serious and significant physical injury." Griffith v. Wal-Mart Stores East, L.P., No. 6:12-CV-00011, 2012 WL 5465501, at *11 (W.D. Va. Aug. 24, 2012) (emphasis in original). Indeed, "[u]nder Virginia law, a plaintiff cannot recover solely for emotional damages caused by a defendant's negligent conduct, if there was not also an accompanying physical injury to the person." C.T.L. ex rel Cassidy v. People Inc. of S.W. Virginia, No. 1:05-CV-00004, 2005 WL 2811785, at *2 (W.D. Va. Oct. 27, 2005); see Hughes v. Moore, 197 S.E.2d 214, 219 (Va. 1973) ("[W]here conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone.").

In the complaint, Jones alleges that she suffered "abuse, fear, anxiety, depression, shame, embarrassment, humiliation, pain, mental suffering and anguish, and emotional distress" as a

6

result of the defendants' negligence. Compl. ¶ 36. These boilerplate, "run-of-the-mill" emotional injuries "fall woefully short" of the serious physical injuries required to sustain a claim for negligent hiring or retention. Griffith, 2012 WL 5465501, at *11; see Elrod, 2010 WL 5620918, at *4 (dismissing negligence claim where plaintiff alleged only "severe mental and physical pain, anguish, indignity, embarrassment and humiliation").

In sum, Jones has failed to state a viable negligence claim under Virginia law, regardless of what theory of negligence she asserts. The court will therefore dismiss Count I of the complaint entirely.

## II. Count II: Sexual Harassment[3]

In Count II, Jones asserts a sexual harassment claim against the defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Virginia Human Rights Act ("VHRA" or "the Act"), Va. Code Ann. § 2.2-3900 et seq. The defendants have moved for dismissal of the VHRA claim in its entirety, arguing that the Act does not apply to either Townsend or Kroger. They have also moved for dismissal of the Title VII claim against Townsend, arguing that individuals cannot be held liable under Title VII. The court agrees on both accounts.

The VHRA provides that an employer with more than five but fewer than fifteen employees may not discharge an employee based on sex or other protected traits. See Va. Code Ann. § 2.2-3903(B). As Jones has conceded, Kroger clearly employs more than fifteen people. See Pl.'s Br. in Opp. at 4. Jones thus cannot maintain a VHRA claim against Kroger. See Walton v. Bd. of Gloucester County, No. 4:06-CV-00075, 2006 WL 3838235, at *5 (E.D. Va. Dec. 4, 2006) (dismissing VHRA claim where "it is clear" that the defendant employs at least fifteen people).

---

[3] Jones has assured the court and the defendants that she does not assert a Title VII race discrimination claim. See Br. in Opp. at 3. The court therefore does not address the defendants' arguments for dismissal of such a claim here.

7

Jones also cannot maintain a VHRA claim against Townsend, because the VHRA "does not create a cause of action against an individual who is not an employer within the meaning of [the Act]." See Walton, 2006 WL 3838235, at *5. The court will therefore dismiss Jones's VHRA claim for failure to state a claim.

Title VII provides that employers with more than fifteen employees may not discriminate against an employee on the basis of sex or other protected traits. See 42 U.S.C. §§ 2000e-2(a), 2000e(b). It is well-settled, however, that individual supervisors like Townsend cannot be held liable for Title VII violations. See Lissau v. Southern Food Servs., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998). Jones's counsel conceded this point at oral argument. See Mot. Hr'g Tr. at 16:1-3, Def.'s Reply Ex. 1, Docket No. 24. The court will therefore dismiss the Title VII claim against Townsend, and Count II will proceed as a Title VII sexual harassment claim against Kroger only.

### III. Count III: Retaliation

In Count III, Jones asserts a claim for retaliation under Title VII, which makes it unlawful for an employer to retaliate against an employee "because [she] has opposed any practice made unlawful" by that statute. 42 U.S.C. § 2000e-3(a). The defendants have moved to dismiss this claim under Rule 12(b)(1), arguing that Jones failed to exhaust her administrative remedies on this claim when she failed to include allegations of retaliation in her EEOC charge. The court disagrees.

A plaintiff must typically exhaust her administrative remedies by filing a charge of discrimination with the EEOC prior to filing a Title VII lawsuit. See 42 U.S.C. § 2000e-5(f)(1); Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002). A plaintiff's EEOC charge defines the scope of her right to file suit in federal court. See Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). It must identify the parties and "describe generally the actions or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (citing 29 C.F.R. §

8

1601.12(b)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jones, 551 F.3d at 300 (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). A plaintiff's failure "to exhaust administrative remedies…deprives the federal courts of subject matter jurisdiction over [her] claim." Id.

It is undisputed that Jones did not complain of retaliation in her EEOC charge. See EEOC Charge, Def.'s Mot. Dismiss Ex. 2, Docket No. 12. However, the Fourth Circuit has recognized an exception to the exhaustion requirement for certain retaliation claims: when a plaintiff has been retaliated against for filing a charge of discrimination with the EEOC, she "may raise the retaliation claim for the first time in federal court." Nealson v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). This exception is "the inevitable corollary of [the Fourth Circuit's] 'generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC].'" Id. (citing Hill v. Western Elec. Co., 672 F.2d 381, 390 n.6 (4th Cir. 1982)). This exception also recognizes that a plaintiff who has "'once been retaliated against for filing an administrative charge…will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation.'" Id. (citing Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989)). In sum, a plaintiff who alleges that she was retaliated against for filing an EEOC charge need not file a second charge before bringing her retaliation claim in federal

9

court.[4]

The defendants acknowledge Nealson, but contend that it is inapplicable here. Specifically, the defendants argue that Jones has alleged that she experienced retaliation before filing her EEOC charge. In support of this argument, the defendants focus on a single paragraph of the complaint, which alleges that Jones experienced retaliation "for her lawful and protected actions of <u>first</u> lodging written and verbal complaints with Defendants about the unlawful and harassing behavior..., and <u>second</u> lodging a complaint with the EEOC when Defendants failed to act on [her] previous complaints." Compl. ¶ 49 (emphasis added). The defendants argue that Jones was required to include complaints of these "first" retaliatory acts in her EEOC charge, and that her failure to do so strips this court of jurisdiction over her retaliation claim.

The court declines to read a single allegation of the complaint in isolation, as the defendants suggest. The complaint repeatedly alleges that the defendants retaliated against Jones after they learned that she had filed an EEOC charge. See Compl. ¶ 19 ("Immediately upon [the] filing of the EEOC complaint being reported to Defendants...Defendants began taking substantive and tangible adverse employment actions toward [Jones]"); id. (alleging that after the defendants learned of the EEOC charge, she "was forced to sweep and scrub floors, clean the break room, 'trash duty,' and [was] forced to work the 'parking lot' late at night"); id. (alleging that "[a]t no time during her employment with Defendants as a cashier prior to her making the complaint to the EEOC was [Jones] ever asked" to perform these duties); id. at ¶ 23 ("In further retaliation for [her] filing of the EEOC complaint [Jones] was continuously verbally reprimanded and singled-out for intentional

---

[4] Some courts in other circuits have retreated from this exception following the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which emphasized the need for "strict adherence to the procedural requirements" of Title VII. See, e.g., Keeley v. Small, 391 F. Supp.2d 30, 40 (D.D.C. 2005). The Fourth Circuit, however, has explicitly rejected this view, emphasizing that "Nealson...remains binding precedent" in this circuit. Jones, 551 F.3d at 303.

10

humiliation, embarrassment, scorn, and ridicule in front of her co-workers"); id. (alleging that a Kroger employee instructed others "to be especially 'harsh' on [Jones], and to intentionally schedule her for the less desirable duties..., and specifically not schedule her for her normal cashier duties..." after her EEOC complaint was filed). The complaint does not contain a single allegation of a retaliatory action occurring before Jones filed her complaint with the EEOC. Considered as a whole, the court finds that the complaint alleges that Jones experienced retaliation arising from the filing her EEOC complaint. The court thus has subject matter jurisdiction over her retaliation claim here. See Nealson, 958 F.2d at 590.

Jones has asserted her retaliation claim against both Kroger and Townsend. As discussed above, however, Townsend cannot be held individually liable for Title VII violations. The court will therefore dismiss Count III against Townsend, and the Title VII retaliation claim will proceed against Kroger only.

### IV. Count IV: Assault and Battery

In Count IV, Jones asserts a state law assault and battery claim premised on two alleged assaults. First, Jones asserts that Townsend and Kroger are both liable under the doctrine of respondeat superior for Gammon's September 18, 2012 assault, in which Gammon "repeatedly caused his body to come into contact with [Jones's] in a sexual manner, intending to create or simulate sexual contact or acts." Compl. at ¶¶ 6, 57-60. Second, Jones asserts that Townsend is personally liable and Kroger is liable under the doctrine of respondeat superior for Townsend's March 30, 2013 assault, in which Townsend bumped Jones's chest repeatedly and yelled at her after she complained about being assigned late night parking lot duty. Compl. ¶¶ 21, 61-65. The defendants argue that this claim must be dismissed with respect to Townsend's alleged assault, because the Virginia Workers' Compensation Act ("VWCA"), Va. Code Ann. § 65.2-101 et seq.,

11

provides the sole remedy for any injury Jones may have sustained as a result. The court agrees.

The VWCA provides certain rights and remedies to employees who suffer "an injury by accident arising out of and in the course of the employment," which "exclude[] all other rights and remedies of such employee... at common law or otherwise." Miller v. Washington Workplace, Inc., 298 F. Supp. 2d. 364, 371 (E.D. Va. 2004). The VWCA thus "precludes an employee from bringing common law personal injury claims against a co-employee or employer for injuries sustained during the course of employment." Id. "An injury is subject to the exclusivity provisions of the [VWCA] if it is the result of an accident and arises out of and in the course of a plaintiff's employment." Richmond Newspapers, Inc. v. Hazelwood, 457 S.E.2d 56, 58 (Va. 1995). Thus, the critical inquiry is "whether [Jones's] injury was (1) an injury by accident, (2) arising out of, (3) and in the course of, her employment." Miller, 298 F. Supp. 2d. at 371. The court finds that any injuries sustained by Jones as a result of Townsend's assault satisfies this three-part inquiry; the VWCA thus provides Jones's sole remedy for those injuries.

An injury occurs "by accident" if it occurs "at a particular time and place, as opposed to cumulative injury from repetitive trauma." Id. (citing Morris v. Morris, 385 S.E.2d 858, 865 (Va. 1989)). This includes "injuries caused by an intentional or willful assault upon an employee by a co-worker or third party." Id. at 371-72 (plaintiff's injury was "by accident" where plaintiff's supervisor grabbed her arm and hurled her toward a door); see also Sutter v. First Union Nat. Bank of Virginia, Inc., 932 F. Supp. 753, 758 (E.D. Va. 1996) (plaintiff's injury was "by accident" when her supervisor grabbed her and forcibly removed her from the workplace). Here, Jones alleges that she was injured when Townsend repeatedly bumped her and yelled at her in the Kroger store where they both worked on March 30, 2013; accordingly, these injuries clearly occurred "by accident" within the meaning of the VWCA.

12

The second element – whether an injury "arises out of" the plaintiff's employment – focuses on whether there is "a causal connection between work and injury." Sutter, 932 F. Supp. at 758. This element "must be construed liberally in favor of coverage under the act." Miller, 298 F. Supp. 2d. at 372 (citing Brown v. Reed, 165 S.E.2d 394, 396 (Va. 1969)). In cases involving intentional torts, "[t]he necessary causal connection may be established if the evidence shows that the attack was directed against the claimant as an employee or because of the employment." Miller, 298 F. Supp. 2d at 372. In Miller, for example, the plaintiff's supervisor, who had allegedly sexually harassed her in the past, grabbed her and shoved her toward a door after she requested a copy of the company's sexual harassment policy. Id. at 371. The Court found that the plaintiff's resulting injuries arose from her employment, because "every event in this scenario, [the plaintiff's] discontent with [her supervisor's] workplace conduct, her request for a copy of the…policy, and [her supervisor's] attack on her, was work-related." Id. at 372; see also Sutter, 932 F. Supp. at 758 (plaintiff's injuries, sustained when her supervisor forcibly removed her from the workplace following her termination, arose from her employment because the assault was work-related and not "motivated by personal feelings or impulses").

On the other hand, when an assault "is personal to the employee…the injury does not arise out of the employment." Hazelwood, 457 S.E.2d at 58. In Hazelwood, the plaintiff was sexually assaulted by a male coworker on several occasions. Id. at 56. The Supreme Court of Virginia held that the plaintiff's resulting injuries were not covered by the VWCA, because those injuries were not work-related. Id. The Court reasoned that the sexual assaults "were of a personal nature and not directed against [the plaintiff] as [an] employee[] or in furtherance of the employer's business." Id.; see also Hartman v. Retailers & Mfrs. Distribution Marking Serv., Inc., 929 F. Supp. 2d 581, 587 (W.D. Va. 2013) (sexual assault by co-worker was personal in nature, so plaintiff's resulting

13

injuries were not covered by the VWCA); Butler v. Southern States Co-op., Inc., 620 S.E.2d 768, 772-73 (Va. 2005) (plaintiff's injuries from sexual assault did not arise from her employment because her assailant's "actions were the result of his asserted personal attraction" to her and "could not be fairly traced to her employment").

In this case, Townsend's purported assault clearly arose from Jones's employment as a Kroger cashier. The complaint alleges that Townsend, the store's general manager, yelled at Jones and bumped his chest against her in an intimidating manner after she complained about being assigned to work "parking lot duty" alone at night. See Compl. ¶¶ 20-21. Townsend allegedly told Jones that "the situation with Trevor Gammon is over!" and "You don't work for your parents, you work for me and if someone tells you what to do you will do it or you will lose your job!" Id. These statements, along with the timing of the assault, demonstrate that Townsend's actions were motivated by what he perceived as Jones's defiant behavior as an employee. Nothing in the complaint suggests that Townsend's actions were motivated by his personal feelings or impulses toward Jones. See Sutter, 932 F. Supp. at 758. On the contrary, just as in Miller, "every event in this scenario…is work-related." 298 F. Supp. 2d at 372. Any injuries suffered by Jones as a result of Townsend's assault thus arise out of her employment.

Jones relies primarily on this court's opinion in Hartman, 929 F. Supp. 2d 581 (W.D. Va. 2013), to argue that Townsend's assault was not work-related. See Pl.'s Supp. Br. in Opp. at 3-5, Docket No. 23. The court finds her reliance on that decision to be misplaced. In Hartman, the plaintiff sued her employers for assault and battery after she was violently sexually assaulted by a co-worker in the dimly-lit parking lot of their shared workplace. Id. at 582-83. This court found that the plaintiff's claim did not fall within the VWCA's exclusivity provision, because the attack did not arise from her employment; instead, it was "personal in nature between two individuals who

14

happened to be co-workers." Id. at 587. In so doing, the court rejected the defendants' argument that their alleged knowledge of the attacker's violent history and their alleged negligence in maintaining their premises "transform[ed] [the attacker's] personal violent predilections and attraction to the plaintiff into a condition of employment for purposes of the VWCA." Id. at 587; see, e.g., Plummer v. Landmark Comm., Inc., 366 S.E.2d 73 (Va. 1988) (holding that injuries sustained by a female delivery driver when she was assaulted by a stranger as she waited in a dimly-lit parking lot arose from her employment, because her employer had notice of the dangerous condition and failed to protect her). The court emphasized that "a personal attack that was 'in no way in furtherance of [the employers'] business...cannot fairly be traced to [the plaintiff's] employment as a contributing proximate cause.'" Id. at 588 (citing Butler, 620 S.E.2d at 773).

Jones argues that, like in Hartman, the injuries she sustained as a result of Townsend's assault do not arise from a "condition of her employment" as a Kroger cashier. Pl.'s Supp. Br. at 3-4. That may be so, but this argument bears no relationship to the issues before the court. The issue here is whether Townsend's assault was work-related or personal in nature, not whether some condition of Jones's employment increased her risk of third party assault. As discussed above, Townsend's assault was clearly work-related. Jones also cites Hartman for the proposition that Gammon's personal motives should somehow be imputed to Townsend because Townsend "invoked" Gammon's name during his assault of Jones. Id. at 4-5; see Compl. ¶ 21 (alleging that Townsend yelled "the situation with Trevor Gammon is over!"). The court cannot find any support for this theory, in Hartman or elsewhere. Regardless of what may have motivated Gammon's earlier assaults, the complaint clearly demonstrates that Townsend's assault was motivated by his frustration with Jones's job performance. Any injury resulting from Townsend's assault therefore arose from her employment, within the meaning of the VWCA.

15

The court need not dwell long on the third element necessary for an injury to be covered by the VWCA. This element requires that the injury occur "in the course of" a plaintiff's employment, which "refers to the time, place, and circumstances of the accident." Sutter, 932 F. Supp. at 759. Townsend's assault allegedly occurred inside the Kroger store where Jones worked during her work hours, so this element is clearly satisfied here. See Miller, 298 F. Supp. 2d at 372 (stating that the third element is "clearly met" when the injuries complained of "occurred during the workday and at [the plaintiff's] place of employment.").

Because Townsend's assault satisfies all three elements of the VWCA's exclusivity provision, the VWCA provides Jones's sole remedy for any injury resulting from it. The court will therefore dismiss Count IV of the complaint with respect to Townsend's alleged assault. The court will also dismiss the portion of Count IV that seeks to hold Townsend liable for Gammon's alleged assault under the doctrine of respondeat superior, as Townsend is not Gammon's employer. See Kensington Assocs. v. West, 362 S.E.2d 900, 901 (Va. 1987) ("Under the doctrine of respondeat superior, an employer is liable for the tortious acts of his employee if the employee was performing his employer's business and acting within the scope of his employment."). Count IV will thus proceed solely as a state law claim for assault and battery seeking to hold Kroger liable for Gammon's alleged assault under the doctrine of respondeat superior.

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted in part and denied in part. Count I will be dismissed in its entirety. The VHRA claim in Count II will be dismissed, and the Title VII sexual harassment claim will be dismissed as to Townsend; Count II will thus proceed as a Title VII sexual harassment claim against Kroger only. Count III will be dismissed as to Townsend, and will proceed as a Title VII retaliation claim against Kroger only. Count IV will

be dismissed as to Townsend's alleged assault and to the extent that it seeks to hold Townsend personally liable for Gammon's alleged assault; Count IV will therefore proceed as an assault and battery claim against Kroger only based on Gammon's alleged assault.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This ___2d___ day of January, 2015.

/s/ *Glen Conrad*
Chief United States District Judge